FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 25, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WILLIAM S.,[1]

                Plaintiff,

      v.

ANDREW M. SAUL, THE
COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

No.   4:19-CV-5164-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff William S. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) improperly determining that Plaintiff did not have a severe physical impairment; 3) discounting Plaintiff's symptom reports; 4) failing to properly consider lay

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 13 & 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

statements; and 5) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 13, and grants the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging a disability onset date of July 1, 1997.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Steward Stallings.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since May 20, 2015, the application date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 99.

[19] AR 108 & 122.

[20] AR 39.

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder and an anxiety disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform medium work except:

  [H]e can never climb ladders, ropes or scaffolds and must avoid exposure to the use of moving or dangerous machinery and unprotected heights. He required work with no interaction with the public, only occasional interaction with supervisors, only brief superficial interaction with coworkers (and this would preclude any team or tandem tasks), and in an environment where there would be very few people around during the performance of the work. He also requires a low stress job, defined as not requiring the worker to cope with work-related circumstances that could be dangerous to the workers or others, and no work requiring sales or production quotas, security, or customer service.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as industrial cleaner and lumbar sorter.[21]

When assessing the medical-opinion evidence, the ALJ gave:

---

[21] AR 19-28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- significant weight to the opinions of Jay Toews, Ed.D., T.L. Browne, Psy.D., and state agency psychological consultants Diane Fligstein, Ph.D. and Jan Lewis, Ph.D.;

- some weight to the opinion of Wayne Hurley, M.D.; and

- little weight to the opinion of Jason England, ARNP, N.K. Marks, Ph.D., Janis Lewis, Ph.D., Steven Johansen, Ph.D., and Deborah Davis, RNC.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[22] Likewise, the ALJ discounted the lay statements from Plaintiff's former supervisor.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

---

[22] AR 22.

[23] AR 24-25.

[24] AR 1.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff fails to establish error.**

Plaintiff challenges the ALJ's assignment of little weight to the examining opinions of Dr. N.K. Marks, Nurse Practitioner Jason England, and Registered Nurse Deborah Davis, and the reviewing opinions of Dr. Janis Lewis and Dr. Steven Johansen.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion, and both

---

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence.[35] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[36] may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

---

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[35] *Lester*, 81 F.3d at 830.

[36] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

     1.   <u>Dr. Marks, Dr. Lewis, and Dr. Johansen</u>

Dr. Marks evaluated Plaintiff in August 2015 and June 2017.[39] In 2015, Dr. Marks diagnosed Plaintiff with unspecified anxiety disorder, moderate; social anxiety disorder; unspecified depressive disorder, moderate, unspecified personality disorder with paranoid and antisocial features, self-report of bipolar disorder, and self-report of PTSD.[40] Based on these mental limitations, Dr. Marks opined that Plaintiff was:

- Moderately limited in understanding, remembering, and persisting in tasks by following detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; learning new tasks; performing routine tasks without special supervision; and making simple work-related decisions; and

- Markedly limited in adapting to changes in a routine work setting, asking simple questions or requesting assistance, communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, completing a normal work day and work

---

[39] AR 422-25, 415-19, & 437-43.

[40] AR 424.

week without interruptions from psychologically based symptoms, and
setting realistic goals and planning independently.[41]

Dr. Johansen reviewed Dr. Marks' 2015 evaluation and concurred with her

findings.[42] In 2017, Dr. Marks diagnosed Plaintiff with the same impairments as in

2015, except for excluding the diagnosis of social anxiety disorder.[43] Based on these

mental limitations, Dr. Marks opined that Plaintiff was:

- Moderately limited in performing activities within a schedule,
  maintaining regular attendance, and being punctual within
  customary tolerances without special supervision; adapting to changes
  in a routine work setting; making simple work-related decisions; and
  maintaining appropriate behavior in a work setting; and

- Markedly limited in being aware of normal hazards and taking
  appropriate precautions, asking simple questions or requesting
  assistance, communicating and performing effectively in a work
  setting, completing a normal work day and work week without
  interruptions from psychologically based symptoms, and setting
  realistic goals and planning interpedently.[44]

---

[41] *Id.*

[42] AR 445-46.

[43] AR 418 & 440.

[44] *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Dr. Lewis reviewed Dr. Marks' 2017 evaluation and concurred with her findings.[45]

     The ALJ discounted Dr. Marks', Dr. Lewis', and Dr. Johansen's opinions because they were unsupported by the record.[46]

     The ALJ's finding that Dr. Marks', Dr. Lewis', and Dr. Johansen's opinions were inconsistent with the longitudinal medical record is rational and supported by substantial evidence. Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[47] Here, the medical record reflects that Plaintiff's mental status examinations and observations had mostly been unremarkable with his behaviors, attitude, appearance, speech, affect, thought, and content all within normal limits.[48] In addition, the records shows that Plaintiff

---

[45] AR 428-30 & 444-47.

[46] AR 26.

[47] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[48] AR 473, 491, 509, 565 (speech, cognition, thought, and memory normal); AR 553-57 & 560 (Plaintiff appeared calm, cooperative, and had a clear oriented stream of thought);

1  appeared to improve with treatment and stable on medication.[49] That the

2  longitudinal medical record was inconsistent with Dr. Marks', Dr. Lewis', and Dr.

3  Johansen's opinions was a clear and convincing reason to discount the opinions.

4       In addition, the ALJ gave significant weight to state agency psychological

5  consultants Dr. Diane Fligstein and Dr. Jan Lewis,[50] who opined Plaintiff had

6  moderate limitations in maintaining social functioning, concentration, persistence,

7  or pace, and his ability to work with coworkers and the general public was limited

8  to very superficial.[51] The ALJ also crafted an RFC that incorporated limitations in

9  social functions by limiting Plaintiff interactions with the public, supervisors, and

10  coworkers.[52]

_____

11

12  [49] AR 394 (Patient outcome improved); AR 750 (Plaintiff's depression/anxiety

13  appears "very stable on current meds"); AR 573, 691 & 694 (reported improvement

14  with depression and anxiety).

15  [50] Plaintiff does not challenge the weight the ALJ gave to the opinions Dr. Fligstein

16  and Dr. Lewis.

17  [51] AR 103, 106, & 120.

18  [52] *See* AR 22 (Plaintiff is "required [to] work with no interaction with the public,

19  only occasional interaction with supervisors, only brief superficial interaction with

20  coworkers (and this would preclude any team or tandem tasks), and in an

21  environment where there would be very few people around during the performance

22  of the work.).

23

1

2      2.    Nurse Practitioner England

3      Nurse Practitioner England began treating Plaintiff in July 2017.[53] In

4  November 2017, Mr. England diagnosed Plaintiff with hearing loss in his left ear,

5  balance problems, and chronic back pain.[54] Mr. England opined Plaintiff had a

6  light level functional work capacity and would miss an average of three days of

7  work per month.[55]

8      The ALJ gave little weight to Mr. England's opinion because the evidence

9  showed Plaintiff does not have any significant physical impairments, Plaintiff only

10 began seeing Mr. England in July 2017, and Plaintiff had appointments for further

11 evaluations.

12

13

14 _____

15 [53] A nurse practitioner is an "other" medical source.[53] *See* 20 C.F.R. § 404.1513(d).

16 The ALJ is to use "other" medical source opinions in determining the "severity of

17 [the individual's] impairment(s) and how it affects [the individual's] ability to

18 work." SSR 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. § 416.913(a(3). In order to

19 reject the competent testimony of "other" medical sources, the ALJ must give

20 specific "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111

21 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

22 [54] AR 518-19.

23 [55] AR 519.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

First, inconsistency with the medical record is a germane reason to discount an "other source" medical opinion.[56] The ALJ highlighted the hearing testing Plaintiff underwent in December 2017, which indicated Plaintiff had moderate high frequency sensorineural hearing loss bilaterally, and that Plaintiff was scheduled to return for a comprehensive vestibular evaluation. The vestibular evaluation revealed no evidence of peripheral vestibular impairment; abnormal tracking (leftward) and saccades (reduced gain) with imbalance is suggestive of central nervous system involvement, suggesting a neurology consult may be beneficial; and recommended Plaintiff return to his primary care physician (Mr. England) for further recommendations.[57] Plaintiff followed up with Mr. England who assessed that Plaintiff's imbalance had improved from the onset and planned on referring him to neurology as recommended by the audiologist.[58] That the longitudinal medical record was inconsistent with Mr. England's opinion was a germane reason to discount the opinion.

---

[56] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole).

[57] AR 764.

[58] AR 766.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

Second, the number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion.[59] By Mr. England's November 20, 2017 opinion, he had been seeing Plaintiff for a few months concerning hearing loss and balance problems, with the first being on July 17, 2017.[60] Since treatment, at time of opinion was limited to a short period of time, the reason meets the germane standard.[61]

Lastly, the ALJ discounted Mr. England's opinion because Plaintiff had an appointment with an audiologist for further evaluation in December 2017.[62] An assessment being premature is a germane reason to discount Mr. England's opinion.

The ALJ's decision to discount Mr. England's opinion is supported by germane reasons and substantial evidence.

---

[59] 20 C.F.R. § 416.927(c).

[60] AR 518.

[61] *See* 20 C.F.R. 404.1527(f)(1) (the length of the treatment relationship and the frequency of examination are factors to consider when weighing the opinion of a non-acceptable medical source.)

[62] AR 518.

1

2

3. <u>Registered Nurse Deborah Davis</u>

3

On February 9, 2005, Ms. Davis performed a psychological evaluation of

4

Plaintiff.[63] Ms. Davis diagnosed Plaintiff with depressive disorder, polysubstance

5

abuse, anxiety disorder, and social phobia.[64] Based on these mental limitations,

Ms. Davis opined that Plaintiff was:

6

- Moderately limited in understanding, remembering, and following

7

  simple instructions; learning new tasks; exercising judgment and

8

  making decisions; and controlling physical or motor movements and

9

  maintaining appropriate behavior; and

10

- Markedly limited in understanding, remembering, and following

11

  complex instructions; exercising judgment and making decision;

12

  relating appropriately to co-workers and supervisors; interacting

13

  appropriately in public contacts; and responding appropriately to and

14

  tolerating the pressure and expectations of a normal work setting.

15

The ALJ discounted Ms. Davis' opinion because Plaintiff's records from the

16

Department of Corrections (DOC) show Plaintiff was able to interact with other

17

inmates and hold two jobs while incarcerated.[65] Inconsistency with the medical

18

---

19

[63] AR 396-99; *see* 20 C.F.R. § 416.927 (2016) (a registered nurse is an "other"

20

medical source).

21

[64] AR 397.

22

[65] AR 27.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

evidence of record is a germane reason to discount an "other source" medical opinion.[66] The DOC behavioral health records show Plaintiff experienced depression and anxiety, but showed improvement with nice weather and when he had frequent contact with mental health providers.[67] The records also show that Plaintiff worked in the inmate kitchen and the therapeutic community, and if taking his medications as prescribed, his mood and anxiety were manageable enough to work in these settings.[68] In light of this medial record, that Ms. Davis' more-limiting opinion was inconsistent with the other medical evidence was a germane reason to discount Ms. Davis' opinion.

Plaintiff fails to establish that the ALJ erred when weighing Ms. Davis' opinion.

**B.    Step Two (Severe Impairment): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred at step two by failing to identify his physical impairments as a severe impairment, specifically hepatitis C, imbalance

---

[66] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole).

[67] AR 297-98.

[68] AR 299.

problems, falls, bilateral hearing loss, and abnormal tracking and "saccades suggestive of central nervous system involvement."[69]

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[70] To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.[71] The claimant's own statement of symptoms alone will not suffice.[72]

A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[73] Similarly, an impairment is not sever if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, reaching, carrying, handling, responding appropriately to

---

[69] ECF No. 13 at 15.

[70] 20 C.F.R. § 416.920(c).

[71] *Id.* § 416.921 (recognizing the claimant's statement of symptoms alone will not suffice).

[72] *Id.*

[73] SSR 85-28 at *3.

supervision and usual work situations, and dealing with changes in a routine work setting.[74]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[75] "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly establishes that [Plaintiff] did not have a medically severe impairment or combination of impairments."[76]

At step two, the ALJ concluded that Plaintiff had the severe impairments of depressive disorder and anxiety disorder.[77] After detailing the medical evidence pertaining to Plaintiff's treatment for a knee injury, back pain, hepatitis C (which has been in remission), and hearing with loss of balance issues, the ALJ found Plaintiff's complaints and treatments had been limited and that none of these conditions, individually or collectively, caused Plaintiff more than minimal or temporary limitations in his functioning.[78] Plaintiff argues the "medical records

---

[74] *Id.* § 416.922.

[75] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[76] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

[77] AR 19.

[78] AR 19-20.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

and opinions are more than enough to meet the *de minimus* step two screening," but provides no explanation as to how the cited evidence is severe.[79]

Here, the ALJ's finding that Plaintiff's knee injury, back pain, hepatitis C, and hearing with loss of balance issues were not a severe impairment is a rational interpretation of the record.[80] The ALJ considered that, while Plaintiff reported knee pain and intermittent swelling if he walked or rode his bike too much, Dr. Richard Jacobs indicated that Plaintiff's knee pain was "due to dysfunction of the normal knee mechanism stemming from his injury and would benefit from physical therapy."[81] The ALJ also considered that Plaintiff had a history of knee pain and hepatitis C, for which he required no treatment.[82] Finally, the ALJ considered the hearing testing Plaintiff underwent in December 2017, which indicated moderate high frequency sensorineural hearing loss bilaterally, and that while there was indication of imbalance, there was no evidence of peripheral vestibular impairment.[83] The ALJ noted that Plaintiff's complaints of hearing loss and imbalance issues had yet to be associated with any specific diagnosis and,

---

[79] ECF No. 13 at 15.

[80] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[81] AR 20 (citing AR 351-52).

[82] *Id.* (citing AR 323-42).

[83] *Id.* (citing AR 763).

therefore, Plaintiff's complaints and treatment had been limited. Moreover, as previously explained, the ALJ properly discounted Mr. England's opinion.

Furthermore, any error at step two is harmless because the ALJ resolved step two in Plaintiff's favor by finding severe impairments and continued the sequential analysis through step five. Also, the ALJ considered Plaintiff's non-severe issues when formulating the RFC.[84]

**C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[85] Second, "[i]f the claimant meets

---

[84] *Id.* ("While the undersigned does not find these conditions to be 'severe' as this term is used for Social Security disability evaluation purposes (i.e., resulting in more than minimal or temporary limitations), a medium level residual functional capacity would be considered reasonable. The undersigned has also included limitations for climbing ladders, ropes, or scaffolds and exposure to the use of moving or dangerous machinery and unprotected heights."); *see Burch*, 400 F.3d at 679.

[85] *Molina*, 674 F.3d at 1112.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[86] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical evidence and other evidence in the record.[87]

As to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence, which entails signs, laboratory findings, or both.[88] However, objective

---

[86] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[87] AR 22.

[88] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1502(f). "Signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

medical evidence is a relevant factor in considering the severity of the reported symptoms. [89] The ALJ cited several specific reasons why Plaintiff's reported disabling symptoms conflicted with the objective medical evidence, including records from the Department of Corrections reporting depression and anxiety with components of generalized anxiety, social anxiety, and bipolar disorder (well managed with medications), which indicated Plaintiff functioned well, could advocate for himself, attend all programming, manage his mental health without much interference from others, and was infraction free for a year and half;[90] unremarkable mental status examinations and observations;[91] and Plaintiff actively participated in his medication management and treatment.[92] Based on the medical record, the ALJ's finding that Plaintiff's reported severe symptoms were

---

*Id.* § 404.1502(g). Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[89] *Id.*

[90] AR 297-99.

[91] AR 305, 307, 347, 578, 552 & 565.

[92] AR 23-24 & 560.

inconsistent with the medical evidence is rational and supported by substantial evidence.

In addition, the ALJ's finding that Plaintiff's conditions improved with treatment is a relevant consideration for the ALJ when assessing Plaintiff's reported symptoms and, on this record, supported by substantial evidence.[93]

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with his daily activities.[94] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[95] The ALJ highlighted that Plaintiff found a job to "keep busy," worked daily around his apartment complex, and reported enjoying

---

[93] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement); *See, e.g.,* AR 750 (Plaintiff's depression/anxiety appears "very stable on current meds"); AR 553-57 & 560 (Plaintiff appeared calm, cooperative, and had a clear oriented stream of thought after a week of in-house treatment where he was able to meet with practitioners, assess his medication, and attend groups, and participate in treatment.); AR 573, 691 & 694 (reported improvement with depression and anxiety).

[94] AR 22-24.

[95] *Molina*, 674 F.3d at 1113.

walking and riding his bike.[96] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which may be achieved in relatively short periods of time and with multiple breaks and limited verbal instructions, do not "contradict claims of a totally debilitating impairment."[97]

Because the ALJ articulated two other supported grounds for discounting Plaintiff's reported symptoms — inconsistent with the objective medical evidence and improvement with treatment — the ALJ's decision to discount Plaintiff's reported symptoms is upheld on this record.

**D.    Lay Witness: Plaintiff fails to establish error.**

The ALJ gave some weight to Plaintiff's former supervisor's statements because her reports of Plaintiff's limitations when interacting with others were consistent with Plaintiff's reported symptomology, but her statements related to Plaintiff's other symptoms (specifically fatigue) were not significant or relevant as they were temporary.[98] "Testimony by a lay witness provides an important source

---

[96] AR 24 (citing AR 630, 677, 680, & 682).

[97] *Molina*, 674 F.3d at 1112-13.

[98] AR 24-25.

of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[99]

Plaintiff's former supervisor testified that Plaintiff would get angry quickly, push his way of doing things onto others, had a bit of OCD about the way things work, and would get angry and frighten his coworkers.[100] The former supervisor also testified that she tried to work with Plaintiff on these issues by sending him home early and supervising him working, but ultimately had to let him go because minimum wage increased and the place of employment had to hire people that did not need as much supervision.[101] The former supervisor confirmed that Plaintiff was able to perform the physical aspects of his job, but had difficulty interacting with others.[102]

The ALJ's decision to discount part of Plaintiff's former supervisor's statement because it was inconsistent with the objective medical evidence is a germane reason for rejecting lay witness testimony.[103] The ALJ included the former supervisor's reported limitations of Plaintiff interacting with others in the RFC and, as to her statements regarding Plaintiff's fatigue, the record shows

---

[99] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[100] AR 59-60.

[101] AR 61 & 63.

[102] AR 61-63.

[103] *See Molina*, 674 F.3d at 1111-12.

Plaintiff continually showed no symptoms of fatigue.[104] This was a germane reason to discount the former supervisor's statements regarding Plaintiff's difficulties, other than interacting with others.

Plaintiff fails to establish error by the ALJ in this regard.

**E.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues the ALJ erred at step five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include the follow limitations: "off-task and unproductive more than 10 percent of the time; the need for close supervision on a persistent, ongoing basis; confrontations with or difficulty receiving instruction from supervisors on an ongoing basis; and causing coworkers to be off-task more than 10 percent of the time."[105] Plaintiff's argument is based entirely on his initial argument that the ALJ erred in considering the medical-opinion evidence, Plaintiff's symptom reports, and lay witness testimony. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[106]

---

[104] *See e.g.,* AR 488-89, 92, 495, 765 (symptoms negative for fatigue).

[105] ECF No. 13 at 20.

[106] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

1

## V.    Conclusion

2

Accordingly, **IT IS HEREBY ORDERED**:

3

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

4

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is

5

**GRANTED**.

6

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

7

4.    The case shall be **CLOSED**.

8

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

9

provide copies to all counsel.

10

**DATED** this 25th  day of June 2020.

11

12

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

13

14

15

16

17

18

19

20

21

22

23